RECEIVED
NOV 22 2019
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SAMUEL ZEAN,

    Plaintiff,

v.

EFINANCIAL, LLC, a Washington Limited Liability Company, SelectQuote Insurance Services, Burialexpense.com,

    Defendants.

Case No. 19cv2958 NEB/TNL

COMPLAINT FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S. C. § 227

DEMAND FOR JURY TRIAL

---

Comes now plaintiff SAMUEL ZEAN, on behalf of himself (or "Plaintiff") alleges as follows:

### I. PARTIES

1. Plaintiff, Samuel Zean, is a resident of the city of Brooklyn Park, Minnesota and the subscriber assigned to, and exclusively uses and maintains, the cell phone that eFinancial and/or its agents, partners, associates, contractors, Burialexpense.com and SelectQuote Insurance Services which owns and operates the website called Burialexpense.com repeatedly placed telemarketing calls using an ATDS or an automatic dialing system and left prerecorded telemarketing voice messages to Plaintiffs on the National Do-Not-Call Registry. Plaintiff successfully registered this phone number with the National Do-Not-Call Registry in 2016 and again on February 12, 2017, before and after Defendants began calling Plaintiff on his cellular telephone.

2. Defendant, eFinancial, LLC, is a Washington Limited Liability Company with its principle place of business located in the Western District of Washington at 13810 SE Eastgate Way, #300, Bellevue, WA 98005.

3. Defendant, SelectQuote Insurance Services, is a California based Insurance Services

SCANNED
NOV 21 2019
U.S. DISTRICT COURT MPLS

Company with its principle place of business located in the state of California 595 Market St., 10th Floor San Francisco, CA 94105.

4. Defendant, Burialexpense.com, is owned and operated by SelectQuote Insurance Services, a California based Insurance Services Company with its principle place of business located in the state of California 595 Market St., 10th Floor San Francisco, CA 94105.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 47 U.S.C. § 227(b)(4), 47 U.S.C. § 227(b)(1)(a), 47 U.S.C. § 227(c)(5), 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

6. Defendant eFinancial (collectively, "Defendants") is a Washington Limited Liability Company with its principal place of business located in the Western District of Washington; Defendant (collectively, "Defendants") SelectQuote Insurance Services, is a California based Insurance Services Company with its principle place of business located in California, whereas Defendant (collectively, "Defendants") Burialexpense.com, is owned and operated by SelectQuote Insurance Services, an Insurance Services Company with its principle place of business located in the state of California. As such, this Court has personal jurisdiction over Defendants and the venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## III. PRELIMINARY STATEMENT

7. Smartphones are an almost mandatory requirement for modern life and perform a vast array of useful functions. Unfortunately, as probably everyone knows quite well, they also come with some extremely frequent annoyances that affects every person in society—so long as one has a cell phone. Specifically, they allow advertisers and sellers with a way to send consumers spam texts, robocalls, and annoying voicemails as is the situation in this case. These calls and messages can simply be ignored, of course. But everyone probably knows how annoying it can be to get deluged with calls and messages from telemarketers. And nobody enjoys having to deal with

[2]

spoofed numbers that are designed to look like local calls which is the trick that Defendants employed pooled of their sleeves to Plaintiff. Defendants' annoying telemarketing robocalls and voicemails were comparable to pests that infected Plaintiff's cell phone.

8. The Telephone Consumer Protection Act, as amended, 47 U.S.C. § 227 ("TCPA"), is a consumer protection statute that confers on Plaintiff the right to be free from certain harassing and privacy-invading conduct, including, but not limited to, protection from unwanted telemarketing calls using an ATDS or calling consumer cell phones using an automatic dialing system or an artificial or prerecorded voice to persons or entities on the National Do-Not-Call Registry, unless they get the consumers' prior express written consent to receive such calls and authorizes an award of damages whenever a violation occurs.

9. More specially, the Telephone Consumer Protection Act of 1991 (the "TCPA") provides that it is against the law:

> (A) to make any call (other than a call made for emergency purposes or made with the *prior express consent* of the called party) using any *automatic telephone dialing system or an artificial or prerecorded voice* – ***
>
> (iii) to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the federal government."

10. The TCPA provides a private right of action and statutory damages for each violation. Congress and the Federal Communications Commission ("FCC") created the TCPA and its implementing regulations in response to immense public outcry about unwanted telemarketing calls and robocalls.

11. This is a lawsuit alleging that Defendant, eFinancial, LLC ("eFinancial"), SelectQuote Insurance Services, ("SelectQuote"), and affiliate Burialexpense.com, violated the Telephone Consumer Protection Act and its implementing regulations by (1) using an automatic telephone

[3]

dialing system ("ATDS") when it called Plaintiff Samuel Zean over 495 times from October 2016, to November 2019, (1) using an ATDS or automatic dialing system or an artificial or prerecorded voice advertisements on Plaintiff's cellular telephone, urging Plaintiff to purchase a "burial insurance" sold by, for and/or on Burialexpense.com website without obtaining Plaintiff's Prior Express Written Consent; and (2) calling Plaintiff's cellular phone using an automatic dialing system or an artificial or prerecorded voice advertisements, urging Plaintiff to purchase a "burial insurance" although Plaintiff is a registrant on the National Do-Not-Call Registry and did not give his cell phone number nor request to be called on his cellular telephone to purchase a burial insurance advertised by each Defendant.

12. eFinancial, SelectQuote, and affiliate Burialexpense.com repeatedly promoted products and services sold on Burialexpense.com website without obtaining prior express invitation or permission evidenced by a signed, written agreement between the consumer and seller(s) which states that the consumer agrees to be contacted by this seller(s) and includes the telephone number to which calls may be placed ("Requisite Do-Not-Call Permission").

13. By placing hundreds of automated calls to Plaintiff, and leaving hundreds of prerecorded telemarketing and advertising voice messages to Plaintiff on multiple phone numbers without his Prior Express Written Consent, and by placing hundreds of automated calls to Plaintiff on the National Do-Not-Call Registry without obtaining Requisite Do-Not-Call Permission, Defendants invaded the privacy rights and right to seclusion of Plaintiff.

14. Plaintiff sues Defendants for their actions that violate the TCPA and invaded his right to privacy and seclusion, which they benefited from, and which arise from hundreds of automated calls to him, and leaving hundreds of prerecorded telemarketing and advertising voice messages in order to advertise the commercial availability or quality of Defendants' products and services in encouraging the purchase of goods, or services ("Burial Expense Insurance Prerecorded

Messages".)

## IV. GENERAL ALLEGATIONS

15. Between October, 2016, and November 2019, Defendants called Plaintiff over 495 times on his cellular phone using leaving hundreds of prerecorded telemarketing and advertising voice messages on Plaintiff's cell phone using an automatic dialing system (ATDS) or an artificial or prerecorded voice advertisements urging Plaintiff to purchase a "burial insurance" without Plaintiff's obtaining Prior Express Written Consent, multiple times while at work during business hours, and especially while at home during nap time and family time since Plaintiff do not have a landline and use his phone as his landlines and primary means of contact.

16. Plaintiff's voicemail was and is currently filled with Defendants' prerecorded telemarketing voicemails that have unfairly occupied the storage capacity of his voicemail. This has compelled Plaintiff to continuously transfer and store numerous prerecorded voicemail messages on an extended storage device due to the enormity or volume of the prerecorded telemarketing messages left by Defendants on his voicemail. Plaintiff has missed important messages from important calls as a consequence that resulted in the loss of income and money.

17. eFinancial, SelectQuote, Burialexpense.com and/or third party acting on Defendants' behalves repeatedly placed automated calls to Plaintiff's cellular telephone from various Minnesota phone numbers beginning in the area code beginning in 651, and 205, and repeatedly left the same prerecorded telemarketing robocalls voicemails that urges Plaintiff to purchase "burial insurance" from Burialexpesne.com which reads as follows:

> **"Applying for coverage is fast and easy, press one to speak with a license agent now or press two to be removed from the calling list. Thank you for your interest in Burialexpense.com. With affordable final expense burial insurance, you're guaranteed to qualify with no medical exam. Applying for coverage is fast and easy, press 1 to speak with a license agent now or press 2 to be removed from the calling list.** [A short pulse. A repeat of the prerecorded message in a c-3po female tone.] Followed by: **"Sorry, I didn't get your response. Goodbye."** [In a c-3po male tone.]

[5]

18.     This establishes that the messages were prerecorded. Additionally, upon answering a call the message will continue to place—and thus, proving only two ways out which is to either press option 1 or 2. Another version of the prerecorded telemarketing voicemail reads as follows:

> *Interest in burialexpense.com. With affordable final expense burial insurance, you're guaranteed to qualify with no medical exams applying for coverage is fast and easy. Press 1 to speak with a licensed agent now or press 2 to be removed from the calling list.* [Long pulse, then a repeat of the c-3po prerecorded message] *Thank you for your interest in burialexpense.com. With affordable final expense burial insurance, you're guaranteed to qualify with no medical exams. Applying for coverage is fast and easy. Press 1 to speak with a licensed agent now or press 2 to be removed from the calling list. Sorry, I didn't get a response. Goodbye.*

19.     Prior to being called by Defendants, and/or the lead Burialexpense.com, Plaintiff never once visited Burialexpense.com, never knew of the website and accordingly never consented the sales of goods and services sold on Burialexpense.com and only visited the website as recently as October 2019 during his investigation of the calls.

20.     However, whenever Plaintiff pressed two to be removed from the so named "calling list," mentioned the recording he is never removed from the list but is repeatedly called again and again for almost 3 years and over 495 times by Defendants. In so doing, Defendants have knowingly and repeated violated their own Internal Do-Not-Call Policies as well as willfully violated the National Do-Not-Call Registry in their failures and refusals to stop calling Plaintiff despite repeatedly pressing the opt-out option during the recording although Plaintiffs had never established any prior or current business relationship with Defendants, nor ever given his phone number to eFinancial, SelectQuote, and affiliate Burialexpense.com nor given consent to be called.

### A. EVIDENCE ESTABLISHING THAT DEFENDANTS' CONDUCTS ARE WILLFUL AND WERE KNOWINGLY DONE

21.     Defendants knowingly used technology that allowed them to 1) conceal their phone numbers; 2) to make their calls and numbers untraceable; and 3) to trick Plaintiff into answering

their telemarketing phone calls by using what is called "neighbor spoofing" when calling Plaintiff.

22. **Neighbor spoofing** is one of the latest strategies of telemarketing and spam callers worldwide, and it is designed to trick a consumer into answering the phone he otherwise would not have answered as was the situation in this case. Not only is neighbor spoofing legally questionable, but it is also a massive threat to the security of consumers' personal information.

23. Neighbor spoofing, otherwise known as NPA-NXX spoofing, is a form of caller ID spoofing used by telemarketers, sellers, and robocallers. Neighbor spoofing uses auto dialing and VoIP (Voice Over Internet Protocol) services to send unsolicited phone calls. These calls have an outgoing Caller ID that closely matches a consumer's area code and phone number.

24. Neighbor spoofing is a simple process. The telemarketers use a third-party call spoofing technology to call a consumer's phone while showing a phone number that appears to be from the consumer's specific area code or NPA-NXX. The telemarketers' technology allows them to send a high volume of neighbor spoofed spam calls randomly using autodialing and VoIP (Voice Over Internet Protocol) as the evidence establishes in this case; a fact that shows eFinancial's representative voluntarily admitted although unprompted or other evidence confirms. This explains why Plaintiff received hundreds of telemarketing phone calls from different phone numbers with the same 651 area code as Plaintiff's cell phone that ends in 1594.

25. This conduct is knowingly willful because the phone calls are designed to be untraceable and is also designed to trick consumers into answering because it looks like a phone number they can relate to and might recognize. Often enough, it works because people would prefer to take a chance at dealing with a telemarketer/spammer than miss an urgent phone call.

26. By mimicking their caller ID as closely as possible to the phone number they are placing the call to, Defendants tricked Plaintiff into answering the phone. This strategy by Defendants ultimately increases the odds that their telemarketers will successfully get victims like Plaintiff

[7]

to answer their phone and sign up for their goods and services. This technology allowed Defendants to used tons of different local phone numbers beginning in area codes to placed hundreds of unwanted calls to Plaintiff on his cell phone leaving the same prerecorded telemarketing voicemails.

27.     Because eFinancial, SelectQuote, and affiliate Burialexpense.com have been so elusive in their attempts to disguise or conceal their identities or attachments with all the phone numbers they used to call Plaintiff, Plaintiff was so compelled to experience out of pocket loss from hiring SafeCart, PeopleByName, IDCaller, Intelius and Beenverified—five of the best in the industry, known for their tracing records, addresses, properties, phone numbers and the registrants of such phone numbers for the purpose of preventing the calls that were being placed to him.

28.     Despite their specialties, each of the companies mentioned above searched but to no avail for the registered owners to the numbers below. All were unable to find any relevant registered owners to (651) 504-3834, (651) 409-9801 and (651) 362-2028) which were registered in the state of Minnesota and used nationwide, including (205) 635-1280 registered in Pinson, Alabama.

29.     PeopleByName.com emailed Plaintiff on November 12, 2019, as follows:

> **"Unfortunately, we have not been able to find the owner of 651) 504-3834, (651) 409-9801 or (651) 362-2028). We first looked in our in-house databases which contain over 1.3 billion records. Then we ran a search in the live phone company data feed which has the most current data available to us. After that we ran a search in third party data feeds. No Joy. Since we could not find the number anywhere, we handed it to our research team to look further. Unfortunately, they were not able to find the owner of this phone number either.** *This usually happens in the case of prepaid phones, public phones or online VoIP numbers (such as Vonage, Skype or MagicJack numbers). In these cases, there is just no trace of an owner."*

30.     Intelius emailed Plaintiff on November 9, 2019, as follows: **"Our search specialists did their best but were unable to complete the Assisted Phone Report that you requested on 11/07/2019"**.

31. According to PeopleByName.com, the Service Provider for each of the numbers that Plaintiff identified above which it uncovered in its searches is ONVOY- LLC. Onvoy, LLC provides telecommunication services. The Company offers network-based *voice* and *messaging* services to wireless, cable, carrier, and communication service providers. PeopleByName.com found and reported the following:

> "**Onvoy delivers VOIIP and messaging services. Voice Over Internet Protocol (VOIP) is a category of hardware and software that enable people to use the Internet as the transmission medium for telephones calls by sending voice data in *packets* using IP rather than by traditional circuit transmissions of the PSTN.**"

32. According to a robocall tracking company the computers are programmed to make 2,000 robocalls each second, and they're targeting consumers' phones as in the case of Plaintiff's.

33. This accounts for why even when Plaintiff's phone did not ring, including even when Plaintiff activated his call rejection on his cell phone to reduce the volvume of calls to his cell phone, he still received prerecorded voice messages. In short, Defendants configurated the calls so that the calls were not traceable. Hence, often even when messages are left on Plaintiff's cell phone his caller ID did not show or reflect the calls.

34. PeopleByName emailed Plaintiff on Nov. 12, 2019 and revealed the following: "Good news! We found the owner of the phone number 205-635-1280. The owner is: Telemarketing Service – Burial Insurance". But it turns out that "Telemarketing Service – Burial Insurance" is not a company but a masquerade Defendants supposedly used to register 205-635-1280 for the purpose of distancing themselves from the number or diverting attention away which was well calculated and willful. The very phrase "Burial Insurance," bring to mind the subject matter of the prerecorded telemarketing messages left on Plaintiff's voicemail by Defendants.

35. This fact establishes that Defendants' conducts in calling Plaintiff, using an automatic dialing system (ATDS) or an artificial or prerecorded voice advertisements is intentional, well

[9]

calculated and Defendants knowingly made specific efforts to illegitimately and inappropriately not register any of the phones numbers they used to call Plaintiff so that any investigation or searches of the numbers would not be traceable back to any of them.

36. When Plaintiff however, pressed option 1 during the prerecorded messages of the calls he is redirected, and the calls would ring or dial after the recordings as if Plaintiff had initiated the calls. Often, when Plaintiff answered no one ever answered the calls and the calls were terminated.

37. On multiple occasions the phone numbers (205) 635-1280, (651) 504-3834, (651) 409-9801 and (651) 362-2028 were answered by the representative of eFinancial representatives who failed to remove Plaintiff from their calling list. Each of the representative called their names and identified themselves as being the representatives of eFinancial.

38. Because for more than three years Defendants were very careful not to reveal their identities as being behind the tons of hundreds of telemarketing phone calls and had been very illusive about who the numbers belong, Plaintiff repeatedly called each of the phone numbers identified above, including called other such phone numbers to find out who were calling him using his mother-in-law's phone number or his wife's in his pursuit to investigate and find out who are behind the calls. In the end, to Plaintiff's surprised a couple of eFinancial representatives answered the calls made to and from the numbers calling Plaintiff's cellular telephone.

39. On one occasion a representative answered as followed, "eFinancial, this is – how may I help you? Plaintiff did not introduce himself and his wife gave an alias to the representative. Minutes later however, an eFinancial representative called Plaintiff's wife on her phone and left multiple messages in her voicemail in an attempt to sell Plaintiff's wife a life insurance by eFinancial using eFinancial's actual well known and recognized phone number (866)-912-4741 to place the calls and stated the number in her voice messages.

40. A search of this number came back as registered to eFinancial. The 866-912-4741

[10]

number was traced back to eFinancial as being the owner and registrar owner of the number. Another eFinancial's representative returned a call on Plaintiff's mother-in-law phone from a call of inquiry from (205) 635-1280, (651) 504-3834, (651) 409-9801 and/or (651) 362-2028 by Plaintiff. eFinancial called on (425) 216-1240, an eFinancial's nationally recognized and registered phone number.

41. On separate occasions when representatives answered the calls Plaintiff asked not to be called. One representative answered, eFinancial, this is – how may I assist you? Still another representative answered, hello, thanks for calling eFinancial on a recorded line. This is – how can I be of assistance today? Still another representative said, thanks for calling eFinancial. This is – how may I assist you today? Representatives would say thanks for calling after the calls are rerouted as if Plaintiff had initiated the calls.

42. In multiple calls from Defendants the prerecorded telemarketing messages disclosed that representatives were unavailable to answer the calls and directed Plaintiff to fill up a web form or and/or shut off.

43. Upon information and belief, the representatives of eFinancial later realized and determined that Plaintiff was attempting to determine the identity of the parties calling him using the numbers (205) 635-1280, (651) 504-3834, (651) 409-9801 and (651) 362-2028) for the website identified as burialexpense.com, which is owned and operated by SelectQuote.

44. Due to their suspicions Defendants so swiftly disconnected and discontinued using the phone numbers but continued to use (205) 635-1280. From this point onward, all the phone numbers beginning in the 651 area codes were no longer active or in service in Defendants' attempt to shield or separate themselves from the numbers and/or their prerecorded telemarketing messages including to destroy any evidence of association.

45. During Plaintiff's recorded conversation with each of eFinancial's representatives, not

[11]

once did any representative attempt to dispute Plaintiff's claims, nor ever alleged that Plaintiff consented to be called, or that Plaintiff gave his phone number at any point to eFinancial or to any of the other Defendants, to be called on his cell phone using an automatic dialing system (ATDS) or an artificial or prerecorded telemarketing advertisements for the purpose of purchasing a "burial insurance".

46. Rather all eFinancial's representatives identified above essentially conceded, apologized and even acknowledged they would remove Plaintiff's number from their calling list but never did. This fact confirms that eFinancial was aware of its conduct in Defendants' collective action to call Plaintiff on his cellular telephone without consent to do so.

47. Even significantly, one of eFinancial's representatives mentioned above conceded to Plaintiff during a recorded conversation by admitting that eFinancial had used an "auto dialer" or automatic dialing system (ATDS) or an artificial prerecorded voice to call Plaintiff on his cell phone although unprompted.

48. When asked about the phone calls one eFinancial's representative acknowledged the calls and referred Plaintiff to eFinancial's website, efinancial.com and invoked Fidelity Life as being the sister company of eFinancial. Still another representative referenced Fidelity Life as the parent company of eFinancial while another attempt to sign Plaintiff and his wife up for life insurance with Fidelity Life and supposedly collected information from Plaintiff and his wife although under the couple's aliases or fictitious names during Plaintiff's investigation.

49. Plaintiff's investigation revealed what was a orchestrated campaign by Defendant eFinancial as Fidelity Life on the other hand concurrently peppered Plaintiff with tons of life insurance solicitations via his email since 2016 to November 18, 2019.

50. Plaintiff also saved recordings of when he answered eFinancial's automated phone calls to him that played its prerecorded messages to him as followed, "Applying for coverage is fast and

easy. Thank you for your interest in Burialexpense.com. With affordable final expense burial insurance, you are guaranteed to qualify with no medical exam. Press 1 to speak with a license agent now."

51.     Defendants, or a third party acting on Defendants' behalves, used ATDS to call Plaintiff's on his cell phone and continuously left prerecorded telemarketing voicemails despite not obtaining the requisite Prior Express Written Consent from Plaintiff.

52.     Between October 2016, and November 2019, Defendants placed burial expense insurance telemarketing calls and left prerecorded messages on Plaintiff's cell phone while at work during business hours and at other places. Below is a sample of just a few of the calls that were screenshotted by Plaintiff showing a few of the phone numbers that were used by Defendants to place the calls to Plaintiff's cell phone.



53.     Plaintiff took a few screenshots of the calls that Defendants made to him but primarily preserved his voicemail full of Defendants' prerecorded telemarketing and advertisements messages in his voicemail by transferring recorded messages to an extended storage device for the

purpose of preserving evidence and creating some space or room in his voicemail for important employment and secular related messages.

54. Upon information and belief, Defendants placed calls to Plaintiff on the National Do-Not-Call Registry.

55. Upon information and belief, the ATDS used to leave the Defendants' burial expense insurance prerecorded telemarketing messages has the present capacity to dial and store random and sequential numbers and can and leave automated telemarketing prerecorded messages without human intervention as is evidence in the recordings Plaintiff saved when he answered the call and the calling began ringing as if Plaintiff was the party calling eFinancial.

56. Pursuant to the TCPA and its implementing regulations, Act 47 U.S.C. § 227, telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) that constitute advertising or telemarketing with the use of an ATDS may not be sent to persons or entities without obtaining Prior Express Written Consent.

57. The requisite consent is not effectuated without first obtaining a written agreement signed by the person or entity being texted that states: "(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."

58. The phone numbers listed that sent prerecorded telemarketing voicemails to Plaintiff's cell phone was identified and acknowledged by eFinancial as owned, controlled and operated by eFinancial. The prerecorded telemarketing voicemails sent to Plaintiff's cell phone are recognized

to be promoting the sales of goods and services sold by burialexpense.com. The website ["burialexpense.com"] that sent the hundreds of prerecorded telemarketing voicemails to Plaintiff's cell phone is owned, controlled and operated by SelectQoute, including all the web's contents, the Copyright and Marks of burialexpense.com.

59. Pursuant to the TCPA and its implementing regulations, telephone solicitations may not be placed to persons and entities that are registered with the National Do-Not-Call Registry at least 30 days prior to being contacted more than once within a 12-month period, and without obtaining prior express invitation or permission evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and the telephone number to which the calls may be placed ("Requisite Do-Not-Call Permission").

60. Nevertheless, Defendants placed over 495 phone calls and left countless Prerecorded Telemarketing Messages despite the fact that Plaintiff's phone number is on the National Do-Not-Call Registry, and without obtaining the Requisite Do-Not-Call Permission of Plaintiff.

61. These actions violate the TCPA and are an invasion of Plaintiff's privacy rights and right to seclusion. The TCPA addresses itself directly to even a single prerecorded call(s) from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102– 243, § 2.

62. Plaintiff's employment requires full-time use of his cellular phone, and, as part of his employment, Plaintiff must keep his cellular phone active at all times so that he can receive work-related phone calls, voicemails, emails, and text messages. Defendants' Burial Insurance Telemarketing Prerecorded Telemarketing voice messages sent filled Plaintiff's voicemail and caused disruption and distraction to Plaintiff's personal and business activities.

[15]

63. By placing the Burial Insurance Prerecorded Telemarketing Messages, Defendants further harmed Plaintiff by: (1) invading his privacy and right to seclusion; (2) wasting his time; (3) causing the risk of personal injury due to interruption; (4) repeatedly filling his voicemail with prerecorded messages and distraction; (4) forcing him to receive junk advertisements occupying his voicemail on his cellular phone causing aggravation and disruption of normal activities; (5) depleting a cell phone's or wireless phone's battery, resulting in increased electricity costs; and (6) intrusion upon and occupation of the capacity of a cell phone or wireless phone.

64. Significantly, Defendant eFinancial for example, is no stranger to calling or using a third party acting on its behalf to use an ATDS to call or send the eFinancial Insurance Text Messages or voicemails to consumers and entities. A current class action lawsuit against eFinancial with Case number 19-cv-01430-JLR, Document # 1, filed on 09/06/19 confirms Plaintiff's assertion.

65. Plaintiff reserves the right to amend his Complaint at any time to seek counsel's representation.

## V. FIRST CLAIM FOR RELIEF

**Negligent Violation of the Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* against each Defendant**

66. Plaintiff reasserts and incorporates herein by reference the averments set forth in paragraphs 1 through 65, above.

67. Plaintiff brings this action against the Defendants for placing automated telemarketing Burial Insurance calls and prerecorded messages to him in violation of the TCPA and its implementing regulations and Defendants' negligent acts caused Plaintiff emotional distress.

68. eFinancial, SelectQuote, and Burialexpense.com individually or collectively each used an automatic telephone-dialing system and/or an artificial or prerecorded voice to make non-emergency calls to the cellular telephone of Plaintiff without his prior express consent.

69. The foregoing acts and omissions constitute negligent violations of the TCPA, including, but not limited to, violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §§ 64.1200(a)(1)(iii).

70. Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every call placed in violation of the TCPA.

71. Plaintiff is also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

72. Defendants violated the TCPA and implementing regulation 47 C.F.R. § 64.1200(c), by initiating or authorizing the calls to the phone number of Plaintiff although Plaintiff was registered with the National Do-Not-Call Registry at least 30 days prior to being contacted by Defendants more than once within a 12-month period, and without obtaining Requisite Do-Not-Call Permission from Plaintiff.

## VI. SECOND CLAIM FOR RELIEF
### Knowing or Willful Violation of the Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* against each Defendant.

73. Plaintiff reasserts and incorporates herein by reference the averments set forth in paragraphs 1 through 72, above.

74. eFinancial, SelectQuote, and Burialexpense.com each individually and collectively used an automatic telephone-dialing system and/or an artificial or prerecorded voice to make non-emergency calls to the cellular telephones of Plaintiff without his prior express consent.

75. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including, but not limited to, violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §§ 64.1200(a)(1)(iii).

76. Under 47 U.S.C. § 227(b)(3)(C), and as a result of the alleged knowing and/or willful

violations of the TCPA, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every call placed in violation of the TCPA.

77. Defendants violated the TCPA and implementing regulation 47 C.F.R. § 64.1200(c), by initiating or authorizing the calls to the phone number of Plaintiff although Plaintiff was registered with the National Do-Not-Call Registry at least 30 days prior to being contacted by Defendants more than once within a 12-month period, and without obtaining Requisite Do-Not-Call Permission from Plaintiff.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests that this Court:

A. Award $500 in statutory damages for each and every call that each Defendant individually or collectively placed, or that a third party placed on each Defendant's behalf in violation of 47 U.S.C. § 227(b)(1) of the TCPA.

B. Award $1,500 in statutory damages for each and every call that each Defendant individually or collectively placed, or that a third party placed on each Defendant's behalf in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

C. Grant appropriate injunctive and declaratory relief, including, without limitation, an order requiring Defendants to implement measures to stop future violations of the TCPA;

D. finding that, Defendants are liable to pay statutory damages of $500 for each of the Burial Expense Insurance call that violated 47 C.F.R. § 64.1200(a) and $500 for each of the Burial Expense Insurance calls that violated 47 C.F.R. § 64.1200(c) that was negligently sent to Plaintiff;

E. entering a judgment in favor of Plaintiff for the total amount of statutory penalties plus pre-judgment interest and allowable costs;

F. granting such other relief as may be appropriate, including entry of an Order enjoining

[18]

Defendant from continuing such unlawful conduct.

## VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues that can be heard by a jury.

DATED this 22th day of November 2019    By /s/ *Samuel Zean*

Samuel Zean
Self-Represented Litigant
8708 62nd Ave. North
Brooklyn Park, MN 55428
Tel: (612) 703-9965

not register any of the phones numbers they used to call Plaintiff so that any investigation or searches of the numbers would not be traceable back to any of them.

36. When Plaintiff however, pressed option 1 during the prerecorded messages of the calls he is redirected, and the calls would ring or dial after the recordings as if Plaintiff had initiated the calls. Often, when Plaintiff answered no one ever answered the calls and the calls were terminated.

37. On multiple occasions the phone numbers (205) 635-1280, (651) 504-3834, (651) 409-9801 and (651) 362-2028 were answered by the representative of eFinancial representatives who failed to remove Plaintiff from their calling list. Each of the representative called their names and identified themselves as being the representatives of eFinancial.

38. Because for more than three years Defendants were very careful not to reveal their identities as being behind the tons of hundreds of telemarketing phone calls and had been very illusive about who the numbers belong, Plaintiff repeatedly called each of the phone numbers identified above, including called other such phone numbers to find out who were calling him using his mother-in-law's phone number or his wife's in his pursuit to investigate and find out who are behind the calls. In the end, to Plaintiff's surprised a couple of eFinancial representatives answered the calls made to and from the numbers calling Plaintiff's cellular telephone.

39. On one occasion a representative answered as followed, "eFinancial, this is – how may I help you? Plaintiff did not introduce himself and his wife gave an alias to the representative. Minutes later however, an eFinancial representative called Plaintiff's wife on her phone and left multiple messages in her voicemail in an attempt to sell Plaintiff's wife a life insurance by eFinancial using eFinancial's actual well known and recognized phone number (866)-912-4741 to place the calls and stated the number in her voice messages.

40. A search of this number came back as registered to eFinancial. The 866-912-4741 number was traced back to eFinancial as being the owner and registrar owner of the number.

[10]