UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SAMUEL GAYGBOU ZEAN, | Case No. 19-CV-2958 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| SELECTQUOTE INSURANCE SERVICES, INSIDERESPONSE, LLC, and TIBURON INSURANCE SERVICES, | |
| Defendants. | |

This case involves telemarketing calls Samuel Zean received over a period of almost two years. The calls advertised burial expense insurance, directing Zean to a website called "Burialexpense.com" ("BE.com"). Zean sued several entities over the calls. One of the entities was dismissed, and one settled. Three defendants remain (collectively, "SelectQuote"). The Court now considers cross-motions for summary judgment. After lengthy discovery, no evidence supports the theory that SelectQuote made, or was responsible for, the calls. For this reason and for the reasons explained below, the Court grants SelectQuote's motion for summary judgment and denies Zean's.

BACKGROUND

I. Telemarketing Calls During the Relevant Timeframe

*The calls.* Zean began receiving unsolicited telemarking calls from various phone numbers between January 2017 and November 2019 ("the relevant timeframe"). (ECF

No. 98 ("Zean Decl.") ¶ 3.) The calls left "prerecorded artificial voice messages" on Zean's cellphone about burial insurance from BE.com. (*Id*. ¶¶ 3, 13.) In response to the telemarking calls, Zean filed suit under the Telephone Consumer Protection Act of 1991[1] (the "TCPA"). (ECF No. 1.)

Zean received the telemarketing calls about burial insurance from several different phone numbers. (Zean Decl. ¶¶ 3, 13; ECF No. 98-13 ("Zean Decl., Ex. 9").) When Zean returned the calls, he contends he reached eFinancial.[2] (ECF No. 47 ("3d Am. Compl.") ¶ 38.) Zean's position, though, is that SelectQuote, not eFinancial, was the entity making the calls, because SelectQuote now owns BE.com. (Zean Decl. ¶ 7.) But discovery revealed that SelectQuote has never had a business relationship with eFinancial, and the record is devoid of evidence that any third party transferred or rerouted the calls to eFinancial. (ECF No. 105-1 ("Randolph 1st Aff.") ¶ 17; *see also* ECF. No. 106 ("Pl. Reply Br.") at 2 (stating that Zean never alleged defendants had a business relationship with eFinancial).)

SelectQuote never placed a call or caused a call to be placed to Zean, left a message on Zean's voicemail, or otherwise contacted Zean in any way. (Randolph 1st Aff. ¶¶ 20–21.) And SelectQuote did not become associated with BE.com until SelectQuote's

---

[1] 47 U.S.C. § 227.

[2] Zean alleges, for example, that the calls were "automatically transferred or rerouted" to eFinancial by SelectQuote. (3d Am. Compl. ¶ 38.)

2

purchase of the site on May 17, 2018, which was over a year after the telemarketing calls to Zean began. (Randolph 1st Aff. ¶ 7.)

*Artificial Voice Messages*. Zean asserts that language from BE.com's website supports his allegation that SelectQuote used an automatic telephone dialing system ("ATDS") to make telemarketing calls.[3] (ECF No. 98-9 ("Zean Decl., Ex. 5").) The language Zean points to is a disclaimer, which states:

> By your clicking the "Submit" button below and submitting your online term life insurance quote request, you are agreeing by your electronic signature to give licensed sales agents at Tiburon Insurance Services, Inside Response, SelectQuote and Allied Insurance Partners your prior express written consent and continuing established business relationship permission to call you at each cell and residential phone number you provided in your online quote request, and any other subscriber or user of these phone numbers, using an automatic dialing system and pre-recorded and artificial voice messages any time from and after your inquiry to Tiburon Insurance Services for purposes of all federal and state telemarketing and Do-Not-Call laws and your prior affirmative written consent to email you at the email address(es) you provided in your online quote request, in each case to market our products and services to you and for all other purposes. Your consent is not required to get a quote or purchase anything from and you may obtain a quote from a licensed sales agent by calling 855-875-9025.

(*Id.*) This disclaimer is a standard TCPA disclaimer. (Randolph 1st Aff. ¶ 15; ECF No. 113-1 ("Randolph 2d Aff.") ¶¶ 17–19.) SelectQuote does not use ATDS, artificial or prerecorded voice messages, nor did they use such technology during the time when Zean received the messages. (Randolph 2d Aff. ¶¶ 14–15.)

---

[3] The TCPA prohibits use of an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice when making the proscribed calls. 47 U.S.C. § 227(b)(1)(A).

## II.     Procedural History

In November 2019, Zean filed a complaint in this Court alleging the telemarking calls violated the TCPA. (ECF No. 1.) The operative complaint asserts claims against defendants SelectQuote, InsideResponse, and Tiburon, which, as noted above, the Court refers to collectively as "SelectQuote."[4] Following discovery, each party now moves for summary judgment.

## ANALYSIS

## I.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *Ingrassia*, 825 F.3d at 896. The party

---

[4] In his initial complaint, Zean sued eFinancial, SelectQuote, and BE.com. (ECF No. 1.) Zean filed a second amended complaint, which dropped BE.com from the lawsuit. (ECF No. 34.) Zean's third amended complaint added InsideResponse, Tiburon Insurance Services, and Allied Insurance Partners. (3d Am. Comp.) Zean and eFinancial stipulated to dismissing eFinancial following a settlement between those two parties, and the Court dismissed the claims against Allied without prejudice after Zean failed to effect service on Allied. (ECF Nos. 54, 78, 94.)

opposing a summary judgment motion "'may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Anderson*, 477 U.S. at 256–57). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Although "[t]he movant has the burden of showing that there is no genuine issue of fact," the nonmoving party "is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. Courts liberally construe *pro se* pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But a *pro se* plaintiff's claims cannot survive a summary judgment motion unless he has set forth specific facts showing that there is a genuine issue for trial. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) ("Although Quam is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to Quam's lawsuit.").

## II. TCPA Claim

The relevant portion of the TCPA prohibits

5

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A). The elements of a claim under this section are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. *Id.* A plaintiff can prove the first element—that a defendant called a cellular telephone number—by showing that the defendant directly made the call or is vicariously responsible for the call being made. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960–61 (8th Cir. 2019).

Even liberally construing Zean's motion, the record contains no evidence to support a conclusion of either direct or vicarious liability.

### A.     *Direct Liability*

To be directly liable under the TCPA, SelectQuote must have "take[n] the steps necessary to physically place" the phone calls to Zean. *Golan*, 930 F.3d at 961 (citations omitted). Zean alleges that SelectQuote used his phone number to "repeatedly" "place telemarketing autodialer calls" and leave "pre-recorded and artificial voice messages." (3d Am. Compl. ¶ 1). The record demonstrates that Zean received calls from different numbers, but it contains no evidence linking SelectQuote to those calls. (*See generally* Zean Decl., Ex. 9.)

Indeed, when Zean returned the phone calls, he reached eFinancial, not SelectQuote.[5] (3d Am. Compl. ¶ 12.) Although Zean originally argued that a marketing scheme existed between eFinancial and SelectQuote, Zean apparently no longer believes SelectQuote is affiliated with eFinancial. (*Id*. ¶¶ 12, 16–23, 38; Pl. Reply Br. at 2.) And the record contains no evidence that a business relationship exists between the two. (Randolph 1st Aff. ¶ 17.)

The sworn affidavit testimony of SelectQuote representative Jeffrey Randolph buttresses the conclusion that SelectQuote has never owned or used the telephone numbers that called Zean. (Randolph 1st Aff. ¶¶ 19–22.) Randolph "carefully reviewed the records of SelectQuote, Tiberon, and InsideResponse to determine whether any information pertaining to [Zean] was contained therein." (*Id*. ¶ 19.) This review confirmed that SelectQuote has "never placed a call to [Zean], left a message on [Zean's] voicemail, or otherwise contacted [Zean] in any way." (*Id*. ¶ 20.) Similarly, Randolph's review confirmed that SelectQuote never "cause[d] a telephone call to be placed to [Zean], cause[d] a message to be left on [Zean's] voicemail, or otherwise cause[d] [Zean] to be contacted in any way." (*Id.*) SelectQuote provides screenshots of records in which SelectQuote searched for the phone numbers in the Third Amended Complaint.

---

[5] The phone numbers Zean provided in his motion for summary judgment exhibits are all numbers that Zean tied to eFinancial in his Complaint. (*Compare* Zean Decl., Ex. 9 *with* 3d Am. Compl. ¶ 38.)

7

(Randolph 2d Aff. ¶¶ 28–29, 31–33; *id.*, Exs. B–C.) There were no results. (*Id*. ¶¶ 30, 34; *id.*, Exs. B–C.)

Zean has offered no evidence that SelectQuote directly made the telemarketing phone calls. Instead, Zean refers to screenshots of his phone to show that the calls occurred (which is undisputed) and conclusory allegations that SelectQuote was behind them (unsupported by any evidence). Zean's evidence does not link SelectQuote to the phone calls, and Zean's claim cannot survive summary judgment. *See Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) ("Once a movant for summary judgment has pointed out to the district court that there is an absence of evidence to support an essential element for which the nonmovant will have the burden of proof at trial, the nonmovant must make a sufficient showing that there is a genuine issue of fact as to that element.") (quotation marks and citation omitted).

*SelectQuote's purported control of BE.com*. In the absence of evidence, Zean claims that SelectQuote *must* be responsible for the telemarketing calls because SelectQuote owned BE.com when Zean received the calls. (ECF No. 96 ("Pl. Br.") at 13.) But the evidence does not support this contention, and a reasonable jury could not make this finding.

First, Zean offers a domain report from an internet website to show SelectQuote's ownership of BE.com. (ECF Nos. 98-5, 98-6.) The report, a snapshot of BE.com's ownership, shows that BE.com was registered on January 18, 2004 and that the current

8

registrant contact is SelectQuote. (*Id*.) Nothing in this domain report shows that SelectQuote owed BE.com during the timeframe the calls were made. So this report does not assist Zean. The record demonstrates exactly what SelectQuote has asserted: that it purchased BE.com on May 17, 2018. (*See, e.g.*, Randolph's 1st Aff. ¶ 8; *id*., Ex. A (sales receipt); ECF No. 105-4 (domain report showing a change of ownership to SelectQuote between February and May 2018).)

Second, Zean points to various language on BE.com referencing dates prior to 2018, which he contends support the notion that SelectQuote actually owned BE.com before May 2018. For example, one sentence on the BE.com website states that "Rates are effect as of 3/1/2017." (Zean Decl., Ex. 5 at 3.) Zean argues this language is proof that SelectQuote owed, controlled, and operated BE.com since at least March of 2017. (Pl. Br. at 19–20.) As another example, BE.com's privacy policy states that the policy was "updated" in 2014. (ECF No. 108-4 at 4.) Neither of these statements could lead a reasonable jury to conclude that SelectQuote owned BE.com in 2014 or 2017. As to the rates statement, BE.com is a conduit through which SelectQuote and its affiliates attract business, and the rates reflect products and services offered by SelectQuote and its affiliates. (Randolph 2d Aff. ¶ 12.) As to the privacy policy, the current BE.com language is a reproduction of SelectQuote's privacy policy which was last updated in February 2014. (*Id.* ¶ 13.) By being a conduit, BE.com displayed the rates and the policies of the

9

underlying owners; the dates do not reflect when SelectQuote owned BE.com but instead reference when SelectQuote (and its affiliates) created the rates and policies. (*Id.* ¶ 12–13.)

*Calls after 2018.* Zean claims that even if SelectQuote did not own BE.com until May 17, 2018, "Defendants are undeniably liable" for the telemarketing calls between May 2018 and November 2019." (ECF No. 117 ("Pl. Opp. Br.") at 8.) But Zean provides no evidence in support. (*Id.* at 8–9.) So his argument on this ground fails.

### B.   *Vicarious Liability*

Zean's evidence on his vicarious liability theory fares no better. True, the TCPA includes an agency theory under which a principal can be vicariously liable if the person directly making the calls is the principal's agent. *Golan*, 930 F.3d at 960–61. Under this theory, BE.com or another party must have acted as SelectQuote's agent when placing the telemarketing calls. *Id.*

Zean's only evidence linking the telemarketing calls to SelectQuote is its current ownership of BE.com, and the thrust of Zean's argument is the same as for direct liability—that SelectQuote owned BE.com during a portion of the relevant timeframe. (Pl. Opp. Br. at 12.) To accept this theory, the Court would need to conclude that a company is liable any time someone purports to act on behalf of the company, even if the person was an unauthorized agent.

This contention contravenes the most basic principles of principal-agent law. A relationship between a "principal and agent cannot be presumed but must be proved."

*Radiance Cap. Receivables Eighteen, LLC v. Concannon*, 920 F.3d 552, 558 (8th Cir. 2019) (citation omitted). "[The] principal is responsible for his agent's acts as long as the agent acts with actual or apparent authority." *Id.* (citation omitted). "Actual authority may be express or implied." *Id.* (citation omitted). An agent would have express authority if SelectQuote explicitly told the agent to make the telemarketing calls. *See id.* In contrast, implied power only "consists of those powers incidental and necessary to carry out the *express* authority." *Id.* (citation omitted, emphasis added). Apparent authority, on the other hand, may exist when a seller allowed a third-party access to information that normally would be within the seller's exclusive control. *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6574, 6592 ¶ 46 (2013). Here, there is no evidence that SelectQuote gave any third party actual or apparent authority to make the telemarketing calls. Zean states that "[t]he record is clear that Burialexpense.com's calls were placed on behalf of the Defendants." (Pl. Opp. Br. at 14.) But Zean has offered no evidence to reach this conclusion.

Zean offers no other explanation for how SelectQuote could be vicariously liable, and so Zean has not met his burden to avoid summary judgment on vicarious liability.

### C.    ATDS

Zean's next theory is that SelectQuote used an ATDS or an artificial or prerecorded voice to call Zean's cellular phone or was vicariously liable for an agent's use of these prohibited technologies. The TCPA defines an ATDS as "equipment which has the

11

capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Zean asserts that SelectQuote must have used an ATDS to make the calls to him because SelectQuote admitted to using "equipment that may meet the definition of an [ATDS]" in an unrelated case involving similar allegations. (Pl. Opp. Br. at 15 & n.2; *see* ECF No. 118-5 ¶¶ 59–60.) But SelectQuote made this admission before the Supreme Court narrowed the ATDS definition to what it is today. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021). So the admission does not establish SelectQuote uses an ATDS under current law.[6] And it also does not establish that SelectQuote directed the use of an ATDS to call Zean. The voice recordings, (ECF Nos. 98-1–98-3 (Zean Decl., Exs. 1A–1C)), also do not establish that that SelectQuote made the calls, and so they are not evidence SelectQuote used an ATDS.

Zean argues that the TCPA disclaimer language on BE.com is sufficient to show SelectQuote used an ATDS. (Zean Decl., Ex. 5.) The Court disagrees. SelectQuote argues that the disclaimer is "simply a standard TCPA disclaimer used as a 'belt and suspenders' method of protecting [SelectQuote] from allegations of TCPA violations." (ECF No. 104 at 8 (citing Randolph 1st Aff. ¶ 15).) Randolph's sworn testimony establishes that

---

[6] Zean also argues that SelectQuote was accused on the Better Business Bureau's website of placing calls from a spoofed number using an ATDS and that SelectQuote responded to the complaints. (Pl. Opp. Br. at 15 n.2.) This evidence is unpersuasive that SelectQuote used an ATDS to make telemarking calls to Zean.

SelectQuote does not use ATDS technology or artificial or prerecorded voice messages in advertising, (Randolph 1st Aff. ¶ 15), and the evidence Zean offers to the contrary is insufficient to contradict Randolph's testimony. Even considering SelectQuote's prior admission and the disclaimer in the light most favorable to Zean, Zean's evidence is insufficient to create a genuine issue of material fact for a reasonable jury to find that SelectQuote used ATDS or an artificial or prerecorded voice messages to call Zean in violation of the TCPA.

In short, Zean's summary judgment argument is based on his vehement belief that SelectQuote is responsible for the telemarketing calls he received. However passionate his belief, it is wholly contradicted by the record. Defendants are entitled to summary judgment.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT

1. Zean's Motion for Summary Judgment (ECF No. 95) is DENIED; and

2. Defendants' Motion for Summary Judgment (ECF No. 111) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 13, 2022

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge